Good morning, Your Honors. I may please the Court. My name is Carol Marks, and I represent Mr. Garner, who is the appellant in this appeal from the Eastern District of California. I will reserve three minutes for rebuttal. Thank you. Your Honors, the sole question before you is the strict interpretation of a United States sentencing guideline that more than doubled Mr. Garner's sentence, 2G2.2B5, for pattern of activity. This Court in the Williamson case in 2006 held that this particular adjustment falls within the universe of so-called expanded relevant conduct. There are two categories of relevant conduct under United States Sentencing Guideline 1B1.3. There is relevant conduct under 1B1.3A1, which is acts that occur during the offense of conviction, and then there is expanded relevant conduct under 1B1.3A2, which is any conduct that's part of the same scheme or plan as the offense of conviction. The Ninth Circuit in Williamson clearly and repeatedly characterized the adjustment that I'm talking about today as expanded relevant conduct under 1B1.3A2. Now, to understand what expanded relevant conduct under 1B1.3A2 means, we look to the Hahn case, which this Court decided in 1992. This Court in Hahn said that expanded the essential components of expanded relevant conduct are similarity, temporal proximity, and regularity. If the relevant conduct in question, that which here is 35 and more years old, is temporally remote, then its relevance depends on similarity and regularity. The similarity, regularity, and temporal proximity must exist in sufficient proportions. And in the Hahn case, there was a question whether five months was temporarily close enough for those three factors to exist in sufficient proportion to one another. So here, where the old conduct is in one instance 35 and in the other instance almost 44 years old, the question is whether it's relevant to the offense of conviction within the rubric of the expanded relevant conduct guideline, and it isn't. Where the district court made a mistake was that the district court simply found that the prior conduct occurred, but what the district court didn't understand was that the finding that the prior conduct occurred isn't enough. In other words, this adjustment under B-5 doesn't substitute for the relevant conduct analysis. It doesn't supplant it. It has to be done in addition to it. Otherwise, there's no meaning to the word relevant as in relevant conduct. The sentencing guideline itself does not contain temporal limits, does it? No, it doesn't. But that doesn't mean that it doesn't have to be relevant. It absolutely doesn't contain temporal limits, and there's no case that actually discusses the balance between the absence of a temporal limit and the need for relevance. But how close do you think it should be before you can consider it? It's got to be on a case-by-case basis. And the reason for that is that the guidelines – oh, that's the wrong word. The guidance under expanded relevant conduct factors in a variety of signposts. For instance, under 1B1.3A2, the district court should have looked at is it the same course of conduct? Is it a single episode? Is it a spree? Is it an ongoing series? Is it a common scheme or plan? Were the events connected? Is there a common factor? Are the victims common? So each case requires this kind of analysis. There is no one answer. I can't say 10 years or 5 years. It's got to be a case-by-case analysis whether the prior conduct is in fact relevant to the offense of conviction. Do his conversations with his daughter about his granddaughter's sexual proclivities, which is much more recent in time, provide any connectivity? The reason that it – well, just – Yes, I will. I'm sorry. No. Okay. Explain why. I will. The reason is that, first of all, the conversation – those conversations in and of themselves don't constitute the B-5 adjustment because it's – they're not contact. And second, the conversations with the granddaughter are indeed part of – would consider – would justifiably be considered a part of this conviction and this course of events, but it needs to be relevant to the 35- and 44-year-old prior conduct, and that is the link that's missing here. The district court didn't make that connection. I interrupted you. No. No, you're fine. You're okay? Okay.  I thought I'd interrupted Judge Fletcher. I wanted to ask a question. I had a similar question. Okay. Go ahead. I'm – She had a – she was about to ask a question. I thought I'd interrupted her. It turns out she had a roughly similar question. You go ahead with your argument. Thank you. What the district court should have done is make a finding whether Mr. Garner's conversations with his granddaughter makes the old conduct more relevant than it would be without the conversation. And the best answer to your question is to say that the case should be remanded back to the district court to make exactly that finding and to decide whether Mr. Garner's conversation with his granddaughter somehow makes those old events more relevant. Did you ask the trial court to do that? Well, we protested the application of this adjustment under – because it wasn't relevant and under – and we protested application of the – of the – of the doctrine here. But it could have been very easy just to ask the trial court to make that finding if you think that's very relevant. Well, the government has the burden of – of proving the relevant conduct. And so I didn't ask the court to do that. In fact, what – what happened here was that the government offered the two – the letters from the purported victims and the court made a finding by clear and convincing evidence that that was sufficient to satisfy the adjustment. Then the court said – Do you have any cases that say 35 years is too far? There are no cases one way or another that give a number to attach to the application of this guideline. Yeah. But our – our decision in Gothrop, it was 11 years old. There's a First Circuit case, Woodward, where it was 23 years old, and a Seventh Circuit case, Lovas, where it was 26 years old, right? Yes, Your Honor. But none of those cases analyzes the – what those cases say is what we know from reading the guidelines. There's no linkage requirement in the language of the guidelines. But that doesn't mean it doesn't have to be relevant. And that's what – what's missing here in the district court's analysis. It applied the adjustment, and then it said, okay, here's the guideline sentence after I apply the adjustment. Now I'm going to move on to something else, instead of deciding whether the adjustment applied and then looking to see whether it applied within the universe of expanded relevant conduct. And that's why the case needs to be remanded for resentencing, is for that analysis. Counsel, I think that everyone would agree that this prior conduct, if it weren't so old, would be relevant. It's the same kind of mindset and conduct that goes into his very extensive activity in child pornography. So I think the only issue really is the time one. Do you agree with that? I think that's right in this case, that that's true. But expanded relevant conduct has various components. One of them is, as you pointed out, the character of the act. And I would be hard-pressed to say the character of the act here has no relevance, and I would feel foolish saying that. But relevance, when we sentence somebody, implies a temporal meaningfulness. Because the older the act is, the less relevant it becomes to who Mr. Garner is the day we're sentencing him. So it's important to factor in them. He's kind of shown us what he is today, and it's not a very pretty picture. Well, Your Honor, that may be true, but we can't sentence him to double what his sentence would be without this adjustment, just because we think that he's a bad person. And I can't tell you that Mr. Garner should be, you know, given a medal or sainted, but the fact is that he had a right to be sentenced in accordance with the sentencing guidelines and with the overall purpose of the sentencing guidelines, which is to avoid disparity in sentence and promote uniformity and fairness. And to sentence Mr. Garner to a sentence that more than doubled his low-end sentence for conduct that occurred over 35 years ago without doing the analysis of how that conduct is relevant to who he is today isn't fair. And it also violates what the guidelines – how the guidelines were meant to be interpreted in this adjustment, which I would remind the Court is listed under specific offense characteristics, which also suggests that there's a relevance requirement. You've used up your time. I have, and thank you very much. Thank you for your argument. We'll hear from the United States at this time. Good morning, and may it please the Court. I'm Camille Skipper, Assistant U.S. Attorney for the Eastern District of California from Sacramento. The expanded relevant conduct analysis that the defense is presenting to the Court simply doesn't apply in this case. And it doesn't apply because Comment 1 of Section 2G2.2 makes it inapplicable. The course of conduct analysis, whether there's a common scheme or plan, is simply what the comment says the Court is not to consider. It says it doesn't matter if the offense occurred during the course of – or the prior conduct occurred during the course of the offense, if it involved the same minor or if it resulted in a conviction for such conduct. What 2G2.2 contemplates is that any prior abuse, two instances or more, would result in the five-level increase that was applied in this case. Is there any outside temporal limit in this area? I've considered – This conduct had occurred 50 years prior to the charged and pled to offense? 30 to 40 years, Your Honor. I believe it's probably a good guideline in this instance. And – If the exact same conduct was 40 years and one month old, you would say it was not relevant under the guidelines? No, I would not. I believe in this instance that – About 41 years. As long as the conduct – 45 years. Yes, I believe it would be relevant. 50 years. I believe it would be relevant. 60 years. If the defendant was still alive, I believe it would be relevant. So your position is there's no temporal limit? In this instance, no. I believe that what the – We don't write just to your case. We write to the future. Yes, Your Honor, I understand that. But with regard to this special offense characteristic – 10 years from now, if you're no longer with the government and you're defending criminal cases and you're up here arguing on exactly the same case and it's a 50-year-old offense, you would concede that it's relevant? With regard to this special offense characteristic, yes. Because I do not believe that Congress's decision to destroy any temporal limits with regard to this special offense characteristic is arbitrary. As this Court is well aware from just the record in this case, this defendant's conduct had longstanding ramifications for his victims from 30 and 40 years ago, and that's clear from the letters and the PSR in this case, as well as for him. Because this conduct was continuing over time. At the time that he was arrested in this offense, one of his – a videotape of a young child being molested by someone that looked like a mother figure. This sort of conduct followed this man for many years. And the devastation that it wrought in his own family, for the victims in the images that he collected, and for the victim that might have existed had he been successful in finding a child to molest in 2005, that – the devastation that that wrought, that would bring. Is that when he came to the attention of law enforcement, 05? It was a – yes. December of 2005. And when he was arrested, he admitted that he had tried to purchase some material  Is that right? That's correct, as well. He tried to purchase material both in 2002 and 2005. Between the 35-year-old events in 2002, does the record tell us anything about his conduct? No, Your Honor, we don't have – except that it appears that he was in the – he must have been in the process of collecting material during that time, but we don't have specific things in the record. Is there any evidence of acts or attempted acts or anything of that like between the 35-year-old events and the 2002 admitted collection of material? No, Your Honor. What is the job of the district court in these situations, just to find if the conduct is relevant and then it counts, and if it's not relevant, it doesn't? Well, I think what the – the responsibility of the district court is to determine whether or not there are two or more instances in the defendant's past. And if there are, that makes it relevant. Here, we're not talking about two or more instances of some sort of criminal activity or two or more instances of some felonious offense. Here, we're talking about two or more instances of sexual abuse or exploitation of a child, and that makes it particularly relevant to a 2G2.2 offense. Should we be concerned that there were no prior prosecutions or convictions? No, you shouldn't, Your Honor. Under Comment 1, the two or more instances of sexual abuse or sexual exploitation are to be considered whether or not they resulted in a conviction for such conduct. And that makes sense because in many cases, individuals, just as Mr. Garner, commit these offenses against minors and are not convicted. In fact, they are never prosecuted. And in this instance, one of his daughters even reported the conduct and was not believed. And there are indications that at one point he moved the family because he was concerned about their activities becoming known. It is not strange by any means that the prior activity would not have resulted in an offensive conviction in the past, and to require that would mean that there would be lots of individuals who had engaged in this activity, and then we found that it was not counted under the guidelines. Congress considered it important that that be considered. It's a five-level increase, which, as the defense has noted, is a large one. But it's necessary because people who have abused children and then go on to commit child pornography offenses are considered dangerous to the community. And we need to protect the community by increasing those sentences. I would also note that it's not a violation of due process because Congress has decided the temporal nexus is not necessary and it is not arbitrary. And the sentence, again, is not unreasonable. I would admit that a 262-month sentence is high in any event. But this defendant is especially deserving. His history and characteristics of the abuse of his own family and the continuing danger to the community that he presents were valid considerations for the district court. And the district court took pains to go through the 3553 factors in determining what the appropriate sentence is in this case. The record is clear that the court considered those factors, and the history and the safety of the community were uppermost in the district court's mind when it sentenced the defendant to 262 months. We believe that this Court should affirm that sentence because it is indeed reasonable and it's warranted on the facts. Roberts. I don't see any other questions. Thank you for your argument. The case just argued will be submitted for decision, and we'll proceed to the next case on the other side. Oh, I'm sorry, Your Honor. I believe that she was out of time. She used all her time. The case just argued will be submitted for decision. Thank you, Your Honor. Next case on for argument is United States v. Byer.
judges: B. Fletcher, Siler , Hawkins